UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUADALUPE JUAREZ,

    Plaintiff,

v.                                          Case No.  8:12-cv-1154-T-24 MAP

TORNADO BUS COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 37).  Plaintiff opposes the motion. (Doc. No. 39).  As explained below, the motion is denied.

**I.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

**II. Background**

Plaintiff Guadalupe Juarez filed this case, in which she alleges violations of the Family Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA"), Title VII, and the Florida Civil Rights Act ("FCRA") based on the following events. Defendant Tornado Bus Company operates a regional bus service in various states, including Florida. Plaintiff was hired in March of 2009 in Defendant's ticket sales department at the Plant City location. At that time, she was an hourly employee entitled to overtime compensation.

In order to keep track of employees' time, employees were required to clock in and out of work using a computer program called Pasajes. However, there was only one computer at the Plant City location and the internet connection (required for Pasajes) often did not work. (Pla. depo[1], p. 60, 63-64). As a result, Defendant's records for Plaintiff's time do not accurately reflect the hours that Plaintiff was at work.[2] (Pla. depo., Ex. 7). Plaintiff contends that as a result of Defendant's faulty time-keeping system, she was often not paid overtime for the hours that she worked. Plaintiff complained when this happened, but not all of the instances where she was not paid overtime were corrected. (Pla. depo, p. 66-67). Plaintiff estimates that on more than five occasions, she was not paid for four to eight hours of overtime that she worked. (Pla. depo, p. 66-67).

---

[1]Plaintiff's February 27, 2013 deposition transcript is filed at Document Number 38.

[2]Exhibit 7 to Plaintiff's deposition shows the times that Plaintiff clocked in and out of work each day via the Pasajes program. For each day, the Pasajes program should reflect the time that Plaintiff clocked in (denoted as "Entrada") and the time that she clocked out (denoted as "Salir"). However, when the internet was not working, she could not clock in or out. A review of Defendant's time records for Plaintiff shows many days where Plaintiff was able to clock in, but did not clock out (or vice versa). (Pla. depo, Ex. 7).

In March of 2010, Plaintiff was promoted to the position of Terminal Manager. Plaintiff contends that after she was promoted to Terminal Manager, she worked overtime for which she has not been paid. The parties dispute whether Defendant properly classified her position as Terminal Manager as exempt from the overtime provisions of the FLSA.

As a result of Plaintiff's promotion, she went from being an hourly employee being paid $9 per hour to a salaried employee being paid $475 per week. (Pla. depo, p. 78). However, she was often paid more than $475 per week as an hourly employee due to being paid for her overtime hours. (Martinez depo,[3] Ex. 9). It is unclear as to how her duties as Terminal Manager differed from her duties when she did ticket sales, as Plaintiff stated that her duties remained the same, except that she was on call 24/7 as a Terminal Manager. (Pla. depo, p. 189).

Plaintiff described her duties as Terminal Manager as follows: She did not have the authority to hire, fire, or adjust rates of pay. (Pla. depo, p. 193). She did not direct the work of the hourly employees. (Pla. depo, p. 214-15). She did not have the authority to resolve employee complaints. (Pla. depo, p. 215). She was not permitted to discipline employees, and when she recommended discipline of employees to Human Resources, her recommendations were ignored. (Pla. depo, p. 86, 194, 215). Additionally, Plaintiff states that she spent the majority of her time, well over 50%, performing manual labor, such as cleaning vehicles and offices, servicing vehicles, running the cash registers, and cleaning the parking lots, floors, and bathrooms. (Pla. depo, p. 216).

However, Plaintiff also acknowledges that she dealt with customer complaints and had

---

[3] Martinez's deposition transcript is docketed at Document Number 38-4. Page numbers refer to the deposition page, not the CM/ECF page number.

the authority to resolve them. (Pla. depo, p. 85). Additionally, she acknowledges that she had to make important decisions on a day-to-day basis to keep the place running and that she frequently made significant decisions on her own. (Pla. depo, p. 88-89). She did not have someone at the Plant City location supervising her, as she was "at the top of the food chain" there.[4] (Pla. depo, p. 88-89).

In 2010, Plaintiff became pregnant with twins that were due in the beginning of November. (Pla. depo, p. 94-95). In February of 2010, she informed Michael Petrovich in Human Resources of her pregnancy. (Pla. depo, p. 89). Petrovich gave Plaintiff FMLA forms to fill out, which she did and returned to him. (Pla. depo, p. 89-91).

On August 1, 2010, Plaintiff was at work waiting for a bus to arrive to take passengers to Dallas. (Pla. depo, p. 95). The passengers were angry because the van drivers were late. (Pla. depo, p. 95). The bus drivers never wanted to load the passengers' luggage onto the bus, so Plaintiff started to load the luggage. (Pla. depo, p. 95). She lifted a luggage and felt a bad cramp in her stomach. (Pla. depo, p. 95-96). As a result, Plaintiff told another employee, Rosemary, that she needed to go to the hospital. (Pla. depo, p. 96-97). Plaintiff put the money that she had collected that day for Defendant in a drawer in her office, (Pla. depo, p. 184). At the hospital, Plaintiff had to have an emergency C-section to give birth to her twins that were born three months premature. (Pla. depo, p. 95-97). The early delivery of her twins caused the twins to be born with physical disabilities. (Pla. depo, p. 202-03).

After Plaintiff awoke from the anesthesia, she called Guadalupe Vazquez ("Ms.

---

[4] As the Terminal Manager, Plaintiff reported to Maria Clyde in Texas. (Doc. No. 38-5, p. 8).

Vazquez"), who did work at Defendant as an auditor and was the sister of Juan Vazquez ("Mr. Vazquez"), the owner and President of Defendant.  (Pla. depo, p. 97-98; Martinez depo, p. 12-13, 19).  Plaintiff told Ms. Vazquez that she had been injured at work and was in the hospital after giving birth to her twins.  (Pla. depo, p. 98).  Ms. Vazquez said that she would call Plaintiff back, but she never did.  (Pla. depo, p. 98).  Plaintiff next called Mr. Vazquez and told him what had happened and asked him what to do regarding her injury.  (Pla. depo, p. 98).  Mr. Vazquez said that he would call Plaintiff back, but he never did.  (Pla. depo, p. 98-99).

While Plaintiff was in the hospital, three of Defendant's employees (Cordero, Nelcy, and Rosemary) informed Plaintiff that she had been terminated.  (Pla. depo, p. 99-101, 188, 199).  However, on August 3, 2010, Jose Martinez, the director of Human Resources, found out that Plaintiff had given birth to her twins, and he sent Plaintiff FMLA paperwork.  (Martinez depo, p. 40, 42).  It took the doctors 30 days to fill out the FMLA paperwork, but once it was filled out, Martinez put Plaintiff on FMLA leave as of August 3, 2010 (through November 15, 2010).[5]  (Martinez depo, p. 43-44).  At some point, Ms. Vazquez threatened to fire Plaintiff if she did not come back to work in September.  (Pla. depo, p. 164-65).  Thereafter, on October 28, 2010, Plaintiff filed a charge of pregnancy discrimination with the EEOC, in which she detailed Defendant's attempts to get her to return to work during her FMLA leave.  (Pla. depo, Ex. 11)

Plaintiff returned to work from FMLA leave on November 15, 2010.  Plaintiff contends that she did not return to the Terminal Manager position, but instead, Plaintiff basically was back in ticket sales.  (Pla. depo, p. 167-68).  During this time, Defendant was performing an audit of

---

[5]Martinez put Plaintiff on FMLA leave as of August 3, 2010 (the date he learned of Plaintiff's C-section), not August 1, 2010 (the date that she had the C-section).

discrepancies regarding missing tickets and money that had been uncovered while Plaintiff was out on FMLA leave. (Pla. depo, p. 168).

On November 15, 2010, Plaintiff informed Martinez that she would be out of the office the next day for a doctor's appointment in the morning. (Doc. No. 38-5, p. 111). Martinez responded that he understood that she had a doctor's appointment and that Ms. Vazquez would be going over some pending documents (presumably as part of the audit) with Plaintiff upon Plaintiff's return. (Doc. No. 38-5, p. 111). Plaintiff did not return to work after the doctor's appointment and did not attend the meeting with Ms. Vazquez. (Martinez depo, p. 20). In response, on November 17, 2010, Martinez sent Plaintiff an email that her failure to return was unacceptable and that if she felt that she could not perform her duties, she should resign. (Doc. No. 39-9). Martinez stated in the email that the email would be considered a written warning. (Doc. No. 39-9).

On November 18, 2010, Plaintiff's employment was terminated. The decision to terminate Plaintiff's employment was made by Martinez and Maria Clyde, Plaintiff's supervisor. (Doc. No. 38-5, p. 8; Martinez depo, p. 18). The reason for the termination set forth on Plaintiff's termination paperwork was the following:

> Tornado Bus Company has decided to separate employment with you due to the missing monies that were under your responsibilities before your departure prior to August 1, 2010. As the terminal Manager it was your responsibility to account for the daily activities and ALL terminal administrative functions including the accounting of deposits and agency collections. Essentially the money for these tickets has not been accounted for and you did not provide any new information regarding the missing amounts. This constitutes a serious matter and the only recourse we have is to separate your employment due to your negligence in accounting for the missing monies. As the terminal manager you did not fulfilled [sic] your job responsibilities.

(Doc. No. 38-6).

The parties do not provide the specific details regarding the missing money. In fact, Defendant merely refers to the reason for Plaintiff's termination as "various irregularities, including financial irregularities," although Defendant acknowledges that it has not accused Plaintiff of misappropriation of the missing money. (Doc. No. 37, p. 10).

The Court has reviewed the record and has found a report created by Ms. Vasquez and Clyde that purportedly lists the allegedly missing money, although the report is written in Spanish.[6] (Doc. No. 38-5, p. 22, 62). However, several of the line items on the report occurred on or after August 1, 2010—the date Plaintiff got injured at work and left to have an emergency C-section. (Doc. No. 38-5, p. 62). With regards to the money that went missing on August 1, 2010 (that Plaintiff was unable to deposit at the bank due to her unexpected hospital stay), Plaintiff did not have a safe at work in which to keep the money and had specifically asked for a safe two weeks earlier.[7] (Doc. No. 38-4, p. 136-137). Additionally, $2,000 of petty cash is listed on the report as missing, but Martinez testified that Plaintiff had returned the petty cash. (Martinez depo, p. 68). Finally, Plaintiff contends that there is evidence that another line item on the report erroneously indicates that certain cash was missing for which Ms. Vasquez herself previously signed a receipt documenting that she had received the cash. (Pla. depo, p. 207-209; Doc. No. 39-3, p. 350). Thus, there is a genuine issue of material fact regarding the reason for Plaintiff's termination (and whether the alleged "financial irregularities" reason is mere pretext)

---

[6]Clyde is the sister of Ms. Vasquez and Mr. Vasquez. (Doc. No. 38-5, p. 6).

[7]On July 15, 2010, Plaintiff sent Martinez an email, in which she stated that she had requested a safe due to the amount of money that she handles, but she had not received one. (Doc. No. 38-4, p. 137).

given the issues with this report. Plaintiff contends that she was terminated as a result of pregnancy discrimination, for taking FMLA leave, and/or in retaliation for her EEOC complaint that she had filed three weeks prior. (Doc. No. 38-3, p. 69).

As a result of the above described events, Plaintiff filed suit against Defendant. In her amended complaint, she asserts the following claims: (1) violation of the FLSA due to Defendant's failure to pay her overtime while she was in ticket sales and when she was a Terminal Manager; (2) violations of the FMLA by harassing and threatening her with termination while she was out on FMLA leave, by failing to return her to her position of Terminal Manager after she returned from FMLA leave, and by terminating her employment four days after she returned from FMLA leave; (3) pregnancy discrimination under the FCRA and Title VII; and (4) retaliation under the FCRA and Title VII by firing her on November 18, 2010 due to her filing an EEOC complaint on October 28, 2010. (Doc. No. 34; Doc. No. 39, fn.1).

### III. Motion for Summary Judgment

Defendant has moved for summary judgment on all of Plaintiff's claims. With respect to the FMLA, pregnancy discrimination,[8] and retaliation claims, the Court finds that genuine issues

---

[8] The Court notes that there is a split of authority regarding whether the FCRA recognizes a claim for pregnancy discrimination. See Hubbard v. Meritage Homes of Fla.,Inc., 2013 WL 2359065, at *5 n.3 (11th Cir. 2013); Carsillo v. City of Lake Worth, 995 So. 2d 1118 (Fla. 4th DCA 2008)(concluding that the FCRA recognizes a claim for pregnancy discrimination); Delva v. Continental Group, Inc., 96 So. 3d 956 (3d DCA 2012)(concluding that the FCRA does not recognize a claim for pregnancy discrimination). Florida's Second District Court of Appeal indirectly addressed this issue when faced with the issue of whether a retaliation claim could be based on a complaint of pregnancy discrimination. See Carter v. Health Management Associates, 989 So. 2d 1258 (Fla. 2d DCA 2008). In Carter, the court noted that the Florida Commission on Human Relations ("FCHR"), which investigates discrimination claims under the FCRA, has taken the position that pregnancy-based discrimination is included in the FCRA's

of material fact exist that preclude summary judgment.[9] Likewise, the Court finds that genuine issues of material fact exist that preclude summary judgment on Plaintiff's FLSA claim. However, a brief review of the Plaintiff's FLSA claim is warranted.

Plaintiff's FLSA claim is based on two time periods. First, Plaintiff claims that Defendant failed to pay her overtime while she was an hourly ticket sales employee. Second, Plaintiff claims that Defendant failed to pay her overtime while she was a Terminal Manager, because Defendant mis-classified her as exempt under the FLSA.

With regard to the overtime she worked while an hourly employee, Plaintiff gave deposition testimony that Defendant failed to pay her all of the overtime that she was due. Specifically, she estimates that on more than five occasions, she was not paid for four to eight hours of overtime that she worked. Defendant argues that this part of her FLSA claim fails, because she cannot identify the specific dates and times that Defendant failed to pay her overtime. The Court rejects Defendant's argument, given the apparent defects in its record-keeping system (Pasajes) regarding the hours that she worked. As explained by one court:

> Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, [t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee. It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment.
> \* \* \*
> [I]n situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held that an

---

prohibition against gender-based discrimination. See id. at 1265. This Court is persuaded by the FCHR's position and concludes that pregnancy-based discrimination is included in the FCRA's prohibition against gender-based discrimination.

[9]The denial of summary judgment includes Defendant's argument regarding back pay.

> employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306, 1315-16 (11th Cir. 2007)(internal citations and quotation marks omitted).  Accordingly, the Court concludes that genuine issues of material fact exist that preclude summary judgment on Plaintiff's FLSA claim to the extent that it based on overtime she worked while an hourly employee.

With regard to the alleged overtime Plaintiff worked as a Terminal Manager, the resolution of this claim is dependant on whether Defendant properly classified her as exempt under the FLSA.  Specifically, Defendant contends that Plaintiff was exempt under the administrative and/or executive exemptions.  Accordingly, the Court will address each exemption.

**A.  Administrative Exemption**

The administrative exemption applies if three elements exist: (1) Plaintiff was paid a salary of at least $455 per week; (2) Plaintiff's primary duty was the performance of office or non-manual work directly related to the management or general business operations of Defendant; and (3) Plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).  The term "primary duty" is defined as follows:

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. 541.700(a).

While it is undisputed that the first element exists—that Plaintiff was paid a salary of at least $455—genuine issues of material fact exist regarding the remaining two elements. With regard to the remaining elements, the factors to be considered include the following:

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. . . . Time alone, however, is not the sole test, and . . . exempt employees [are not required to] spend more than 50 percent of their time performing exempt work.
>
> \*     \*     \*
>
> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. 541.700(b), (c). Plaintiff has stated that she spent the majority of her time, well over 50%, performing manual labor, such as cleaning vehicles and offices, servicing vehicles, running the cash registers, and cleaning the parking lots, floors, and bathrooms. Furthermore, she was often paid more than $475 per week as an hourly employee. Given the facts before the Court,

the Court concludes that genuine issues of material fact exist that preclude summary judgment on the issue of whether the administrative exemption applies.

### B.  Executive Exemption

The executive exemption applies if four elements exist: (1) Plaintiff was paid a salary of at least $455 per week; (2) Plaintiff's primary duty was management of a department of Defendant;[10] (3) Plaintiff customarily and regularly directed the work of two or more employees; and (4) Plaintiff had the authority to hire or fire other employees, or her suggestions and recommendations as to the hiring, firing, advancement, promotion, and any other change of status of other employees were given particular weight.  While it is undisputed that the first element exists—that Plaintiff was paid a salary of at least $455—genuine issues of material fact exist regarding the remaining three elements.  For example, Plaintiff states that she did not direct the work of any employees, that she did not have the authority to hire, fire, or adjust rates of pay, and that he recommendations to Human Resources were ignored.  Given the facts before the Court, the Court concludes that genuine issues of material fact exist that preclude summary judgment on the issue of whether the executive exemption applies.

### IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 37) is **DENIED**.  The parties are directed to file their joint pretrial statement by Friday, July 5, 2013.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of June, 2013.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge

---

[10] The description of "primary duty" set forth regarding the administrative exemption applies to the executive exemption.